IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DENNIS PIERSON, II,

            Plaintiff,

v.                                               OPINION AND ORDER

KILOLO KIJAKAZI,[1]                          21-cv-506-wmc
Acting Commissioner of Social Security,

            Defendant.

---

Plaintiff Dennis Pierson, II seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding that Pierson was not disabled within the meaning of the Social Security Act. Pierson contends that the administrative law judge (ALJ) who decided his case improperly evaluated: (1) his treating physician's opinion that he had work-preclusive limitations; and (2) the evidence regarding his mental health functioning.[2] The court concludes that the ALJ's assessment of the treating physician's opinion and the mental health evidence was well-explained and supported by the record. Therefore, the court will affirm the Commissioner's decision.

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's appointment as acting commissioner.

[2] In addition to these challenges, plaintiff contends that the decision denying benefits is invalid because Andrew Saul, the former Commissioner, was not appointed in accordance with Article II of the Constitution. This argument is based on *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), but this court has repeatedly rejected *Seila*'s application to Social Security decisions multiple times. *See Schwechel v. Kijakazi*, No. 20-CV-700-WMC, 2022 WL 135022, at *5 (W.D. Wis. Jan. 14, 2022); *Kreibich v. Kijakazi*, No. 20-cv-1045-bbc, 2022 WL 538261, at *6 (W.D. Wis. Feb. 23, 2022) (collecting cases). The argument is rejected for the same reasons provided in these previous decisions.

BACKGROUND

Dennis Pierson originally applied for disability benefits in June 2014, when he was 43 years old. That claim was denied by an ALJ in May 2017, and the denial was affirmed by this court. *Pierson v. Kijakazi*, No. 18-cv-114-wmc (W.D. Wis. Dec. 18, 2021). However, Pierson filed a second application for disability benefits and supplemental security income in March 2018, when he was 47 years old. He alleged that he has been disabled since the date of the previous denial, May 31, 2017, due to back problems, shoulder problems, tennis elbow, over-active nerves, depression, anxiety and an ulcer. (AR 317, 324, 359.)[3]

After the local disability agency denied his claim initially and on reconsideration, plaintiff requested an administrative hearing, which was held via videoconference on September 9, 2020, before ALJ Robert Tjapkes. (AR 37–80.) Pierson was represented by counsel and testified at the hearing that he had lower and mid-back pain every day. (AR 60.) Pierson acknowledged that he was able to work part-time as a groundskeeper at a golf course, so long as he had a day of rest in between workdays. (AR 53–54.) Pierson was also able to drive and do some hunting and fishing (AR 57), although his girlfriend took care of most of the shopping and household chores. (AR 56.) Pierson testified that he got depressed at times, for which he took medication, but that he was not receiving any other mental health care. (AR 60.)

In a March 2021 decision, the ALJ found that Pierson was not disabled. (AR 10–36.) The ALJ determined that Pierson had the following, severe impairments: degenerative disc disease of the lumbar spine, status post laminectomy; degenerative disc disease of the cervical

---

[3] Record cites in this opinion are to the administrative record located at Dkt. 13.

2

spine; carpal tunnel syndrome bilaterally; and obesity. The ALJ found that Pierson had the residual functional capacity to perform a reduced range of sedentary work. (AR 19.)

In particular, the ALJ found that Pierson has the residual functional capacity to perform sedentary work, except:

> he can stand and/or walk only 4 hours out of an 8-hours in a workday. He can only occasionally climb ladders, ropes, or scaffolds. He can occasionally work around hazards such as unprotected heights or unguarded, moving machinery. [He] can frequently reach and handle. [He] can occasionally be exposed to extremes of cold and heat.

(AR 19.) Relying on the testimony of a vocational expert, the ALJ concluded that Pierson was not disabled because he could perform his past relevant work as a truck dispatcher broker. (AR 28.)

## ANALYSIS

The question before this court is whether the ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). This standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The ALJ must identify the relevant evidence and builds a "logical bridge" between that evidence and the ultimate factual determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

As previously noted, plaintiff challenges the ALJ's decision on two grounds: (1) the ALJ erred by: failing to evaluate the opinion of plaintiff's treating physician properly; and (2) failing to evaluate the experts' mental health opinions and plaintiff's mental health functioning properly. The court addresses these arguments below.

**I. Dr. Romang's Opinion**

Dr. Timothy Romang, who specializes in orthopedics, treated plaintiff for his various, physical ailments for several years. In July 2015, before plaintiff's present, alleged onset date, Dr. Romang completed a medical source statement opining that plaintiff's ability to work would be limited by his neck and low back pain, cervical radiculopathy, spinal stenosis, tennis elbow and widespread pain. (AR 1806–08.) Dr. Romang opined that plaintiff would be limited to lifting less than 10 pounds, standing and walking for three hours, and sitting for four hours in an eight-hour workday. Dr. Romang also opined that plaintiff would need a job that permitted shifting positions at will, and that he would miss more than three days of work each month.

On May 30, 2018, after plaintiff had undergone back surgery and carpal and cubital tunnel release surgeries, Dr. Romang signed a letter stating that all of the restrictions from his July 2015 opinion continued to apply. (AR 1992.) However, Dr. Romang completed a "release to work" form in July of 2018, stating that plaintiff could be released to light work if he: (1) avoided prolonged, repeated use of his upper extremity and standing for more than 30 minutes at a time; and (2) was permitted to alternate between sitting and standing. (AR 2001, 2103.)

The ALJ concluded that Dr. Romang's opinions were unpersuasive because they were not supported by or consistent with the overall record evidence. (AR 25.) While plaintiff challenges the ALJ's discussion of Dr. Romang's opinion as too cursory, most of his argument is not directed at Romang's opinions or even the ALJ's discussion of them. He instead includes a lengthy discussion with several, string case citations addressing the applicable legal standard for reviewing medical opinions generally, but without explaining how those cases are helpful or attempting to apply the legal standard to the medical opinions in this case. Plaintiff briefly

criticizes the ALJ for failing to discuss whether Dr. Romang's opinions were supported by the medical record or consistent with other medical opinions. He also criticizes the ALJ for attempting to interpret imaging results on his own, as well as for finding that plaintiff had received only conservative treatment during the relevant period.

However, none of plaintiff's arguments is persuasive in light of the ALJ's thorough discussion of Dr. Romang's opinions. First, the ALJ found that Dr. Romang's opinions were not supported by his own treatment records. Indeed, discussing each of plaintiff's visits with Dr. Romang between September 2016 and July 2020, the ALJ noted that although plaintiff reported having back pain at several of the visits, he also reported that his pain was "about the same" as it had been, his low back pain was "pretty good," and he was able to work part-time at a golf course. (AR 21–22, 25, citing AR 1936–37, 1998–99, 2081–82, 2280–81.) Further, the ALJ noted that Dr. Romang's examinations were generally unremarkable, noting only some tenderness in plaintiff's lumbar spine, but normal strength, intact sensation and negative straight leg raises. (*Id.*) In fact, between June 2017 and July 2020, Dr. Romang's only treatment recommendations were for plaintiff to continue his pain medications and have steroid injections as needed. (*Id.*) Moreover, the ALJ found it telling that nothing in plaintiff's more recent medical records suggested that his physical impairments had worsened since May 2017, a period before which plaintiff had already been found not disabled. Thus, the ALJ concluded that Dr. Romang's notes did not support his opinion that plaintiff was precluded from performing even sedentary work.

Second, the ALJ emphasized that plaintiff's more recent imaging results similarly describe only "minor degenerative changes" and "minor disc bulging." (AR. 20–21, 25, citing 1925–26, 2026, 2086–87.) While plaintiff criticizes the ALJ for attempting to "interpret" MRI

5

results himself, the ALJ simply repeated how the radiologist, consultative examiner **and** Dr. Romang summarized those results.  (See AR 1928, 2075 (Dr. Romang noting that May 2016 MRI showed "minor disc bulging," no "central canal or foraminal stenoisis beyond a mild degree," and "no cord signal abnormality"); AR 2019 (Dr. Johnson, consultative examiner, observing the  same).)

Third, the ALJ found that Dr. Romang's opinions were not supported by plaintiff's consultative examination, during which he reported pain and exhibited tenderness on palpitation to some areas on his back, but was able to walk normally, get on and off the examination table without difficulty, had normal strength, grip and sensation, and squatted with only minor difficulty.  (AR 2019–20.)  And again, while plaintiff's primary complaint at the consultative examination was pain, around the same time, he had reported to Dr. Romang that his pain medication was helping and that his back pain was "about the same" as it had been in 2017.  (AR 2078.)

Fourth, and finally, the ALJ found plaintiff's treatment remained conservative throughout the period relevant to his renewed disability claim.  (AR 25.)  Before his alleged onset date, plaintiff underwent surgical procedures that he reported were beneficial, including a lumbar laminectomy/discectomy, right carpal tunnel release, right cubital tunnel release, and left elbow surgery.  (AR 21, 25.)  Also relevant to the ALJ's review, at follow up appointments since those procedures, plaintiff consistently reported that he was doing better; he did not seek out other, specific treatment; and Dr. Romang recommended only that plaintiff continue taking pain medication and receive pain injections on an as-needed basis.  (*Id.*)  Plaintiff also criticizes the ALJ for describing his treatment as "conservative," but an ALJ is certainly entitled to consider the course of a claimant's treatment, 20 C.F.R. § 404.1529(c)(3)(v), and injections

6

*are* generally considered "conservative." *See Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) ("Prill's treatment—injections, orthotics, and physical therapy—was conservative."); *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (characterizing epidural injections as "conservative treatment"); *Burnam v. Colvin*, 525 F. App'x 461, 464–65 (7th Cir. 2013) (same).

Thus, the ALJ's consideration of Dr. Romang's opinions and the basis for them is supported by substantial evidence and provides no grounds for remanding this case.

## II. Mental Health Opinions

Plaintiff also challenges the ALJ's evaluation of his mental health limitations. In particular, the ALJ found that plaintiff's anxiety and depression were non-severe impairments, and he did not include any mental limitations in assessing plaintiff's residual functional capacity. (AR 17–19.) Plaintiff now argues on appeal that the ALJ erred by rejecting all of his mental health opinions, but the ALJ's analysis was supported by substantial evidence. The ALJ also provided a thorough discussion of plaintiff's mental impairments and treatment, evaluated all of the mental health opinions, and explained why plaintiff's mental impairments were not severe.

The ALJ found the opinion of Gregory Cowan, Ph.D, the agency psychiatric examiner, unpersuasive because his conclusions were not supported by his own examination findings, nor by the results of other examinations in the record. (AR 18, 27.) The ALJ came to the same conclusion before rejecting the state agency consultant opinions as well, noting that although the mental health consultants both found plaintiff would have difficulty with concentration, persistence, maintaining pace and interacting with others, plaintiff's actual mental status examinations were generally unremarkable. During the time that plaintiff underwent therapy

7

before November 2017, he was described consistently as being alert, cooperative, oriented and goal directed, with adequate memory and concentration, an appropriate mood and affect, good eye contact, clear speech, good insight, intact judgment and average intelligence. (AR 18, citing 1905, 1940, 1942, 1944, 1963, 1968, 2111, 2239.) After he stopped therapy in November 2017, plaintiff reported that his anxiety and depression were stable and manageable with medication. (AR 1999, 2008, 2155.) Finally, the ALJ noted that plaintiff received no specific mental health treatment after November 2017, other than medication management. (AR 18.)

The ALJ also discussed plaintiff's daily activities, which suggested that his mental impairments were not significantly limiting. The ALJ noted that plaintiff was able to take care of his grandchild when needed, prepare simple meals, perform light household chores, go outside a couple times a day, drive a vehicle, pay bills, count change, handle a savings account, use a checkbook, engage in hobbies such as woodworking, hunting and fishing, and engage in social activities with friends. (AR 17, 404–07, 439–42.) Although these activities are certainly not dispositive, when combined with his most recent function report, in which plaintiff reported that he got along well with others and could handle changes in a routine, they are additional grounds to question the agency consultants' opinions. (AR 17, 444.) The ALJ amply explained his conclusion that plaintiff had mild mental health limitations, but that his impairments were not severe and did not require additional limitations in his residual functional capacity. The ALJ's explanation and conclusion are supported by the evidence in the record and his decision, and plaintiff has identified no basis for remanding this case.

ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, is AFFIRMED, and plaintiff Dennis Pierson, II's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered November 14, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge